The second case is the fraud case, as we've been calling it. That's 1835-46 and 19497. And it starts with a search warrant that flows from the first case. Mr. Marangolo. Yes, your honors. We would like the court to vacate counts one and two. And like I said in the beginning of the argument for the other case, the ICBC, the Chinese bank that was operating in London, was the company that issued the loan to Mr. Brennerman. They are not FDIC insured. And under the statute that a company, in order to be convicted of bank Wasn't there evidence, counsel, that Morgan Stanley was defrauded as well? I don't, I don't believe that there was any evidence that Morgan Stanley was defrauded of the money. The money's one part part that Morgan Stanley investment LLC is also not FDIC insured. But there were allegations that money passed through Morgan Stanley. But respectfully, your honor, that the the Chinese bank IDCC, that was the bank that brought the civil case. That was the bank that was in, you know, for the purposes of this argument, and I guess the jury concluded that that Mr. Brennerman defrauded IDCD IDC, but they are not FDIC insured. Therefore, we submit that counts one and two should be vacated based solely that it doesn't meet the Well, let me let me ask you what your argument is exactly. Because if I understand it correctly, the jury was instructed and the summation focused in the bank fraud case on Morgan Stanley in as precisely because of the FDIC insured element. So is your argument that the evidence was insufficient to support a verdict? Morgan Stanley, I thought your argument was constructive amendment. Yes, yes, your honor. But you're also raising a sufficiency challenge. In addition to the constructive amendment in the indictment, your honor, because it says in the indictment bank one, which is I understand, can we put the constructive amendment aside just for a moment? And let me ask you, how is the evidence insufficient as to Morgan Stanley? Because the loan itself never originated. The fraud itself never originated with Morgan Stanley. But the argument of the government is that your client nevertheless benefited from the fraudulent statements he made, because Morgan Stanley issued him a special credit card. One person from the credit card operations referred him to investment personnel at Morgan Stanley that he wouldn't otherwise have had entree to. So that's the government's argument. Why is that insufficient as a matter of law? Well, as a matter of law, they were not defrauded under the bank statute. They never gave up to get a credit card or get favorable treatment, whether it be Morgan Stanley, JP Morgan Chase, private client. This isn't something that would be out of the norm, just common sense. It wouldn't be something out of the norm that virtually any person with good credit would not benefit from. Therefore, saying the client wouldn't. OK, let me finish. I'm so sorry, Judge. I'm sorry. I'm sorry. So this is an awkward situation here by phone. Let me let you finish, please. No. So I just submit that anything that happened with the IDC, you know, the Chinese bank and to go to Morgan Stanley and what the government arguments, those those arguments regarding Morgan Stanley and getting a credit card is insufficient, doesn't meet the burden that that they need and the proofs under the statute, under the elements of the statute. So your argument is Morgan Stanley wasn't defrauded by offering these services? Absolutely. Absolutely, Judge. And what what case would you ask us to look to as precedent that that would not be enough for fraud? That he would get a benefit that he would get a credit card that required a credit level or credit standing that he had to lie about to secure that he gained entree to investment personnel that he would not have gained entry to, but for the falsehood. So so what's the case that you have to have gotten money? You have to have gotten an actual loan because I'm not aware of that. I'm not aware of a case either, Judge, and I apologize, uh, you know, but I can and not to digress from your question. I'm not trying to avoid. I just don't. I don't know a case. I mean, I'm not, you know, I just don't. Well, to that extent, how do how do we rule for you in the absence of any authority that that that that is not insufficient to establish a fraud? Well, I would circle back to the indictment where where Morgan Stanley is and this this came about throughout the trial. That's a different argument. That's a different argument. How dare the government says that the indictment did say I.C.B.C. was an example of the banks defrauded and that all of the discovery made clear that they were viewing Morgan Stanley as a victim. Why is that not enough to defeat your constructive amendment and variance claims? Because that was that wasn't expressed in the indictment and that wasn't that was it was just bank one was in the indictment. It was no, no. They say it was as an example of banks defrauded. So so, you know, it's like saying, you know, so and so was a conspirator and others. So why is that pleading not enough to save them from your variance and constructive amendment argument? I, I don't have any. I.C.B.C. was an example. The only thing I could say, Judge, is they knew they could improve I.C.B.C. and this this all came about during the trial. Well, it was before the trial because you had discovery and you had thirty five hundred material. Right. Also, you know, they focused on non monetary potential losses to Morgan Stanley. Morgan Stanley did not lose anything whatsoever, you know, to give a credit card to, you know, someone to talk on the phone about investments and, you know, maybe to be put up to, you know, a high level manager. You know, I don't think that that rises to the level of bank fraud. OK, thank you. Is there any other questions on the brief from the court? Well, I'm trying to get at I'm trying to get at the fraud perpetrated on Morgan Stanley, and it's very amorphous in my mind. Well, but I'll ask the government. You are arguing there was no fraud perpetrated against Morgan Stanley. Is that correct? That is correct. OK, then why don't we you have reserved three minutes of rebuttal from your first argument, which I will allow you to carry over to this case, and then we'll hear from the government on the fraud case. Yes, Your Honor, may please the court. This is again Danielle Sassoon for the United States. Also, what was the fraud perpetrated on Morgan Stanley? Yes, Your Honor. I'll explain the fraud in a moment. I just want to set forth the law that I think is important and applicable here, and I'll point the court to the Second Circuit case Rathamando 144 F. Third 197, where the court held that when a defendant deliberately supplies false information to obtain a bank loan, but plans to pay back the loan and therefore believes that no harm will ultimately accrue to the bank, he has still committed fraud. And he got the money there. He got the loan there. Right. Yes. And here here he he did effectively receive a loan from the bank by getting lines of credit. But he did not get any money from the bank, did he? Well, he had use of the credit card and he had the bank account at a lower rate. So he, in fact, did get. But is there is there any allegation that he misused the credit card that he didn't pay his bills or anything like that? Rathamando stands for the proposition that that's not necessary. What has to be shown is that the defendant deliberately provided false information to get access to the loan here to the credit card as well. And as an initial matter, I want to emphasize. Contrary to what the defendant's lawyer has said here, there was testimony in the appendix at page 960 that there absolutely was a threshold amount of finances that a person would have to show to get access to the benefits of Morgan Stanley's private wealth management. And for particular financial advisor who Brennerman dealt with, that threshold was approximately one million dollars. So the misrepresentations that Brennerman made to get access to the lines of credit and the lower rates and the credit card were material to getting access to those accounts, for example. But he never if I understand the record, he never got the loan and there's no evidence that he relied on any advice from this private wealth advisor. Is there? So, again, this financial advisor gave him opened an account for him where he had lower rates. And so that's absolutely a monetary benefit. He got lower rates on what? On his credit card? I didn't hear you. Lower rates on what? The credit card? On his bank account. And then with the credit card, it came with perks and also access to the line of credit. And he did use that credit card. Right, but you said he got lower rates. And the question is, I'm asking is lower rates on what? To maintain his bank account. And with respect to the particular credit limits with the credit card, those were specific to the private wealth management clients. And so- Did he ever exceed the limits? There was no evidence of that. But under Rasmundo, that's irrelevant because even if he paid his credit card bill, the fact that he got access to that line of credit through misrepresentation makes it bank fraud. But you agree, don't you? I mean, I understood your theory of the case was that his dealings with Morgan Stanley were not to secure a credit card. It was ultimately to secure a much more significant loan. And that never came about. I mean, I understand your argument that he got enough benefit that you can pursue this as a fraud case. But am I right that your theory on Morgan Stanley was he approached them in order to have them finance the same things he had been trying to use ICBC for, right? That was a component of it after he- Okay. So Rasmus does not really pertain there because there the defendant obtained the loans that was the whole object of the fraud. The question here is whether you sufficiently prove bank fraud when you show that the bank gave him incidental benefits. I mean, he was talking big. And so they thought he was going to be the kind of customer that they would give this special credit card to, give other perks to. Isn't that really what the evidence showed here? Judge Radji, I would not describe the benefits as incidental, even though it was part of a larger scheme to obtain even larger benefits through the investment banking arm of Morgan Stanley. So to the extent, Your Honor, thinking of a case like the recent Supreme Court case in Kelly, there the obtaining of money didn't amount to a fraud because it was incidental to a regulatory object, something that had nothing to do with a scheme to obtain money and property. Here, to be sure, the Morgan Stanley benefits were one step along the way as part of a larger overall scheme, but throughout- But he never took the next step. The next step was never taken, was it, counsel? Not for lack of trying. He was introduced to Kevin Bonebrake. He did send misrepresentations to him and tried to initiate discussions for misrepresentations and ask for additional material, and because the defendant didn't have it and was perpetrating a fraud, he backed off. Or- But wait a minute. If Morgan Stanley saw through it, how could they be defrauded? You just said they saw through it and didn't participate. Again, before Morgan Stanley backed away, he received a number of monetary benefits, and he also received access to the investment banking arm. Whether they fully saw through it to decide it was a fraud isn't as clear as the fact that they didn't receive enough assurances to feel confident making an ultimate investment in his business. Ms. Sesay, let me take you then with what- how you say Morgan Stanley was defrauded, namely in giving him a credit card and in giving him access to a special advisor. What fraudulent statements did he make to Morgan Stanley that induced them to do that? I understand they weren't going to give him millions without doing more due diligence, but what fraudulent statements induced them to give the credit card and the special access to the investment advisor? Yes, Judge Radji. So, in order to open those accounts and to get the credit card, as the financial advisor testified, he had to make a showing of significant net worth and ability to pay. And so, he made a number of misrepresentations, including in written applications to the wealth management arm in order to open these accounts that included lies about his citizenship, lies about his compensation and the nature of his work, lies about his net worth, and lies about the revenue of black fans. And all of those were as part of the application for these specific accounts that he did open and these benefits that he did receive. And you're saying the bank was defrauded at least to that extent, actually defrauded. Okay. So, the intent was to defraud it even more, but you're saying you succeed on the conviction because there was evidence of fraud up to the point of the credit card and the investment access. Yes, Your Honor. And with respect to the investment banking, the statute also criminalizes an attempt to execute a scheme to defraud. And so, the fact that ultimately Morgan Stanley didn't rely on his misrepresentations to give him money in the end isn't what is decisive in the end. Did this go to the jury on an attempt theory? I don't remember that. Did it go to the jury on an attempt theory? I don't believe so, Judge. I'll have to check the record and I can let Your Honor know by the end of the argument. But I will say with respect to the constructive amendment argument, the fact that this bank fraud with respect to Morgan Stanley was part of a larger effort to obtain financing for the business is part of why there's a constructive amendment here. As Your Honor's address noted, ICBC was just one example in the indictment, and the indictment made clear that there were false representations to numerous financial institutions in the course of obtaining or attempting to obtain loans for purported business ventures. No other questions? Thank you, Ms. Sassoon. I'm going to turn to Mr. Marangolo, who reserved three minutes of rebuttal on the first case, but I will allow him to use it now. I'll be brief. Your Honor, I just want to let you know that Morgan Stanley Smith Barney LLC, which is part of what we're talking about, is also not insured with FDIC, and that's Barry is really critical. And what I believe, if that is what the prosecution has presented with the Morgan Stanley Smith Barney LLC, which is who Mr. Brenner was trying, I guess, these allegations to do, because they were also not FDIC insured. Therefore, it could not be a bank fraud. Is that argument made in your brief? That is, Judge. That's on the reply page seven, and it's the second paragraph, last full sentence. You know the rule about arguments made for the first time in reply briefs, right? I believe that's in the other brief too, but I just was looking at my reply brief, but I could try to go forward. I think it's also- And you say it's in page seven of your reply brief? Yes, page seven of the reply brief. In the paragraph, the second paragraph from the top, the last sentence. Now, is that relevant? I'm sorry, is that only relevant to the investment advice? I don't know what the government was saying, the credit card, the investment advice, and so I believe that- Although his personal funds were held in an FDIC insured account at Morgan Stanley, so the insured account was FDIC insured. Then you say the Morgan Stanley investment division was not. Correct. But there's no development of that argument as to why, if Morgan Stanley was insured, we would treat its investment division separately. There's no development of that, is there? I believe there was a trial, and the prosecutor could correct me if I'm wrong. I'm just looking. Okay, it is in the original brief, Your Honor, also on page 13 of the top paragraph on page 13, where it says the investment division, the division that Mr. Brenneman was actually dealing with. But I would circle back. Yes. I'm sorry, so would your argument, therefore, be that we should not consider the access to the exclusive investment advice as part of the bank fraud because it was obtained from a portion of Morgan Stanley that's not FDIC insured? But what does that leave you with in terms of sufficiency, just crossing the line, that the credit card was issued by an FDIC insured bank, a part of Morgan Stanley that was FDIC insured? Right, but there's no evidence at trial that the credit card was issued based on the initial ICBC fraud. Anyone could go into Morgan Stanley, in which he has a credit number. I mean, so we steal the money? No, but not the credit card your client got. That's the point here. Well, we have to deal with this. I mean, it's not the big fraud that they're saying he intended. But it's like getting any number of credit cards that have different gradations. You have to meet certain standards to get some of the more prestigious ones. Your client lied about various things that would, if he had told the truth, would not have made him eligible for the card he was given. That's the government's theory. But that's the government's theory, yes. And there's no, my knowledge and the record, there's no evidence of that. No, no, they just pointed us to the evidence. Your client filled out documents in which he in this country, and that was false. If he had told the truth, they never would have given him this credit card. That's the argument. Okay, that's the argument. Now, why is that insufficient evidence of fraud, at least to that limited extent? It may be, Judge. I did not review whether there were lies on the credit application or those applications. I was more focused on the $5 million loan from the Chinese company, which is why he received 144 months in prison. But your focus now is that there was insufficient evidence against a fraud to Morgan Stanley. Those were the statements he made to Morgan Stanley. And now you're telling us you don't know if they were true. I mean, I thought it was pretty clear they weren't. He wasn't a United States citizen. Then if they're false, and that's what the government says was the entire bank fraud, I think, I mean, I'm not the court, but I think that's a little, what they did here with using the bank fraud allegation, and the $5 million was, if the fraud was the credit card, and then they're using a $5 million fraud and judgment to try to get this Chinese bank back the money by saying he got a fake credit card. I mean, I don't have any law on that, Judge, but I just think that's not nice. It does sound like it's a triangle upside down with a tiny little fraud, whatever, on the bottom, leading to a very big judgment at the end, jury trial and judgment. That's the argument you're making, Mr. Marangolo. Anything else? Nothing, Judge. Thank you so much. I apologize if I was talking over anyone, and I hope everybody. No, no, thank you. Thank you. I merely want to report with the transfer citation to page 1632 in the transcripts where the jury was inspected on an attempt at serious bank fraud. Thank you. Thank you, counsel. Thank you, everybody. Stay safe. Have a good day.